WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shawn Boyd,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Commissioner of the<br>Social Security Administration,<br><br>　　　　　　Defendant. | No. CV-14-08066-PCT-ESW<br><br><br>**ORDER** |

　　　　Pending before the Court is Plaintiff Shawn Boyd's ("Plaintiff") appeal of the Social Security Administration's ("Social Security") denial of his claim for disability insurance benefits. Plaintiff filed his Title II Social Security Disability Insurance application in April 2010, alleging disability beginning December 20, 2008.

　　　　This Court has jurisdiction to decide Plaintiff's appeal pursuant to 42 U.S.C. § 405(g). Under 42 U.S.C. § 405(g), the Court has the power to enter, based upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing. Both parties have consented to the exercise of U.S. Magistrate Judge jurisdiction.[1] (Doc. 15). After reviewing the Administrative Record ("A.R."), Plaintiff's

---

[1] This case was reassigned to Hon. Eileen S. Willett on November 14, 2014.

Opening Brief (Doc. 20), and Defendant's Response Brief (Doc. 23),[2] the Court finds that the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence and is free of harmful legal error. The decision is therefore affirmed.

# I. LEGAL STANDARDS

## A. Disability Analysis: Five-Step Evaluation

The Social Security Act provides for disability insurance benefits to those who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). To be eligible for benefits, the claimant must show that he or she suffers from a medically determinable physical or mental impairment that prohibits him or her from engaging in any substantial gainful activity. The claimant must also show that the impairment is expected to cause death or last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

To decide if a claimant is entitled to benefits, an ALJ conducts an analysis consisting of five questions, which are considered in sequential steps. 20 C.F.R. § 404.1520(a). The claimant has the burden of proof regarding the first four steps:[3]

> **Step One**: Is the claimant engaged in "substantial gainful activity"? If so, the analysis ends and disability benefits are denied. Otherwise, the ALJ proceeds to step two.
>
> **Step Two:** Does the claimant have a medically severe impairment or combination of impairments? A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied at this step. Otherwise, the ALJ proceeds to step three.
>
> **Step Three:** Is the impairment equivalent to one of a number of listed impairments that the Commissioner acknowledges

---

[2] Plaintiff did not file a Reply brief.

[3] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

>are so severe as to preclude substantial gainful activity? 20 C.F.R. § 404.1520(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step of the analysis.
>
>**Step Four:** Does the impairment prevent the claimant from performing work which the claimant performed in the past? If not, the claimant is "not disabled" and disability benefits are denied without continuing the analysis. 20 C.F.R. § 404.1520(e). Otherwise, the ALJ proceeds to the last step.

If the analysis proceeds to the final question, the burden of proof shifts to the Commissioner:[4]

>**Step Five:** Can the claimant perform other work in the national economy in light of his or her age, education, and work experience? The claimant is entitled to disability benefits only if he or she is unable to perform other work. 20 C.F.R. § 404.1520(f). Social Security is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's residual functional capacity, age, education, and work experience. *Id*.

### B. Standard of Review Applicable to ALJ's Determination

The Court must affirm an ALJ's decision if it is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). Although "substantial evidence" is less than a preponderance, it is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*.

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and

---

[4] *Parra*, 481 F.3d at 746.

detracts from the ALJ's conclusions. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. *See Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). This is because the ALJ, not the Court, is responsible for resolving conflicts, ambiguity, and determining credibility. *Magallanes*, 881 F.2d at 750; *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court must also consider the harmless error doctrine when reviewing an ALJ's decision. This doctrine provides that an ALJ's decision need not be remanded or reversed if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted); *Molina*, 674 F.3d at 1115 (an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion") (citations omitted).

## II. PLAINTIFF'S APPEAL

### A. Procedural Background

Plaintiff, who was born in 1977, has experience working as an account manager, furniture deliverer, pizza deliverer, casino host, ticket seller, and coin machine repairer. (A.R. 65-66). Plaintiff alleges that on December 20, 2008, at the age of 30, he became unable to work due to Meniere's disease. (A.R. 72, 96).

Plaintiff filed his initial application in April 2010 (A.R. 156), which Social Security denied on November 16, 2010. (A.R. 110). On June 10, 2011, upon Plaintiff's request for reconsideration, Social Security affirmed the denial of Plaintiff's application. (A.R. 117). Plaintiff then requested a hearing before an ALJ. (A.R. 124). The ALJ held a hearing on November 13, 2012, during which Plaintiff was represented by an attorney. (A.R. 45-70). In his December 17, 2012 decision, the ALJ found that Plaintiff is not

disabled. (A.R. 1-6). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Social Security Commissioner. (A.R. 1-6). On April 18, 2014, Plaintiff filed a Complaint (Doc. 1) pursuant to 42 U.S.C. § 405(g) requesting judicial review and reversal of the ALJ's decision.

### B. The ALJ's Application of the Five-Step Disability Analysis

The ALJ completed all five steps of the disability analysis before finding that Plaintiff is not disabled and entitled to disability benefits.

#### 1. Step One: Engagement in "Substantial Gainful Activity"

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since December 20, 2008, the alleged disability onset date. (A.R. 13). Neither party disputes this determination.

#### 2. Step Two: Presence of Medically Severe Impairment/Combination of Impairments

The ALJ found that Plaintiff has the following impairments that are severe when they are considered in combination: (i) Meniere's disease with dizziness, vertigo, and imbalance; (ii) paroxysmal supraventricular tachycardia with recurrent arrhythmias; and (iii) an anxiety disorder, not otherwise specified (20 C.F.R. 404.1520 (c)). (A.R. 13). This determination is undisputed.

#### 3. Step Three: Presence of Listed Impairment(s)

The ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Social Security regulations. (A.R. 13-15). Neither party disputes the ALJ's determination at this step.

#### 4. Step Four: Capacity to Perform Past Relevant Work

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), subject to several restrictions. (A.R. 15). The ALJ assessed that Plaintiff is limited to unskilled work and is unable to lift any more than ten pounds occasionally. In addition, the ALJ found that

Plaintiff is restricted from climbing, crawling, or kneeling, and may only occasionally crouch or squat.  Finally, Plaintiff is restricted from exposure to unprotected heights and driving.  (*Id.*).

Based on the RFC, the ALJ determined that Plaintiff is unable to perform his past relevant work.  (A.R. 19).  Plaintiff disputes the ALJ's assessed RFC, arguing that the ALJ mischaracterized and improperly weighed the evidence.  Plaintiff also argues that the ALJ failed to fully and fairly develop the record.

### 5. Step Five: Capacity to Perform Other Work

At the November 2012 hearing, a vocational expert ("VE") testified that given Plaintiff's assessed RFC, age, work experience, and education level, Plaintiff would be able to work the unskilled jobs of document preparer, surveillance monitor, and telephone operator.  The ALJ adopted the VE's testimony and found that the jobs identified by the VE exist in significant numbers in the national economy.  (A.R. 20).

Plaintiff asserts that there are an insignificant number of document preparer, surveillance monitor, and telephone operator jobs existing in the State of Arizona.  Plaintiff argues that the ALJ thereby failed to meet the burden at step five by establishing that Plaintiff can perform other work existing in significant numbers.

### C. Plaintiff's Challenge to the ALJ's Analysis at Step Four

#### 1. The ALJ Did Not Mischaracterize the Evidence in Discrediting Plaintiff's Testimony

When evaluating the credibility of a plaintiff's testimony regarding subjective pain or symptoms, the ALJ must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  In the first step, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  The plaintiff does not have to show that the impairment could reasonably be expected to cause the severity of the symptoms.  Rather,

a plaintiff must only show that it could have caused some degree of the symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If a plaintiff meets the first step, and there is no evidence of malingering, the ALJ can only reject a plaintiff's testimony about the severity of his or her symptoms by offering specific, clear, and convincing reasons. *Lingenfelter*, 504 F.3d at 1036. The ALJ cannot rely on general findings. The ALJ must identify specifically what testimony is not credible and what evidence undermines the plaintiff's complaints. *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). In weighing a plaintiff's credibility, the ALJ can consider many factors including: a plaintiff's reputation for truthfulness, prior inconsistent statements concerning the symptoms, unexplained or inadequately explained failure to seek treatment, and the plaintiff's daily activities. *Smolen*, 80 F.3d at 1284; *see also* 20 C.F.R. § 404.1529(c)(4) (Social Security must consider whether there are conflicts between a claimant's statements and the rest of the evidence). In addition, although the lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his or her credibility analysis. *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005); *see also* 20 C.F.R. 404.1529(c); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (while subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects).

Here, Plaintiff argues that the ALJ misinterpreted the evidence when evaluating Plaintiff's credibility. Plaintiff argues that the ALJ erroneously stated that Plaintiff alleged debilitating pain. (Doc. 20 at 4). In his decision, the ALJ stated that "I conclude that [Plaintiff's] allegations of debilitating pain and disabling functional limitations are not fully credible." (A.R. 19). While it is correct that Plaintiff alleged debilitating dizziness and fatigue, not debilitating pain, Plaintiff must show that the ALJ's error is harmful. "The burden is on the party claiming error to demonstrate not only the error, but

also that it affected his "substantial rights," which is to say, not merely his procedural rights." *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012).

The evaluation of Plaintiff's credibility is discussed in Section 5 of the ALJ's decision. (A.R. 36). The ALJ's reasons for rejecting Plaintiff's symptom testimony are as follows:

1. The ALJ found that Plaintiff's daily activities are not as limited as expected given Plaintiff's complaints of disabling symptoms. (A.R. 19). For example, evidence in the record indicates that Plaintiff drives his wife to school every day and takes care of his two young children. Plaintiff also goes to church every week, goes to the grocery store, and performs household chores. In addition, Plaintiff rides a stationary bike three times weekly for about five to ten minutes. *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (upholding denial of disability benefits where claimant could "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries"); *see also Molina,* 674 F.3d at 1113 ("Even where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

2. The ALJ noted that Plaintiff stated that he stopped working due to a business-related layoff rather than because of his impairments.[5] (A.R. 19). A claimant's work record is a proper consideration in weighing Plaintiff's credibility. *Smolen*, 80 F.3d at 1284-85 (stating that a claimant's work record is one of the factors an ALJ is to consider in weighing a claimant's credibility).

3. The ALJ also found that Plaintiff's demeanor did not support Plaintiff's allegations. (A.R. 19). *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (an ALJ's

---

[5] Contrary to Plaintiff's assertion, the ALJ did not mischaracterize the evidence in making this finding. Plaintiff's last day of employment was December 20, 2008, where Plaintiff worked as a slot service host. (A.R. 187). At the November 13, 2012 hearing, the ALJ asked "How come you stopped working for the casino in 2008?" (A.R. 54). Plaintiff responded "I was later laid off from that job due to the economy." (*Id*.). The evaluation by Doris Javine, Ph.D. also reported that Plaintiff was laid off due to the economy. (A.R. 284). Dr. Oluyemisi Olubi also reported that Plaintiff was laid off due to the economy in December 2008. (A.R. 332).

- 8 -

personal observations may be used in "the overall evaluation of the credibility of the individual's statements").

The above reasons provided by the ALJ for discrediting Plaintiff's testimony are specific, clear, convincing, and are supported by substantial evidence in the record. Any error in the ALJ's reference to "allegations of debilitating pain" is harmless as (i) the ALJ provided other proper reasons for rejecting Plaintiff's symptom testimony and (ii) the error would not alter the validity of the ALJ's ultimate nondisability determination. *See Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1162–63 (9th Cir. 2008).

### 2. The ALJ Properly Weighed the Medical Records

In weighing medical source opinions in Social Security cases, there are three categories of physicians: (i) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to a treating physician's opinion than to the opinion of a non-treating physician. *Id.* An ALJ cannot reject a treating physician's opinion in favor of another physician's opinion without first providing specific and legitimate reasons that are supported by substantial evidence, such as finding that a treating physician's opinion is inconsistent with and not supported by the record as a whole. 20 C.F.R. § 404.1527(c)(4) (ALJ must consider whether an opinion is consistent with the record as a whole); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir.2002); *Tommasetti*, 533 F.3d at 1041 (finding it not improper for an ALJ to reject a treating physician's opinion that is inconsistent with the record).

Despite Plaintiff's contention (Doc. 20 at 6), the opinions of Drs. Kwiatkowski and Olubi with respect to Plaintiff's vertigo, dizziness, and fatigue are contradicted by the opinions of other doctors. For example, Dr. Glenn Kunsman diagnosed Plaintiff with vertigo, but opined that Plaintiff's condition would not impose any limitations for 12 continuous months. (A.R. 276). Consultative examiner Dr. Sarah Shepherd opined that

despite Plaintiff's diagnosis of Meniere's disease, Plaintiff is not precluded from work. (A.R. 254-58). Since the opinions of Drs. Kwiatkowski and Olubi are contradicted, the ALJ must provide specific and legitimate reasons for rejecting the opinions of the treating doctors.

### 1.  Dr. Terrance Kwiatkowski

The ALJ discussed Dr. Kwiatkowski's February 21, 2011 letter, which states that Plaintiff "would have a significant amount of difficulty holding down a solid job" due to Plaintiff's vertigo. The ALJ gave little weight to Dr. Kwiatkowski's opinion. Plaintiff argues that the ALJ improperly rejected Dr. Kwiatkowski's opinion. (Doc. 20 at 5).

In explaining why Dr. Kwiatkowski's opinion was given little weight, the ALJ stated that the opinion is not supported by the medical records. This is a specific and legitimate reason for giving the opinion little weight. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

The ALJ also found that Dr. Kwiatkowski's opinion is inconsistent with other substantial evidence in the record. The ALJ noted that Dr. Kwiatkowski's opinion is inconsistent with Plaintiff's activities of daily living, such as caring for his children, driving a car, and grocery shopping. This is a specific and legitimate reason for discounting a physician's opinion. 20 C.F.R. § 404.1527(c)(4) (ALJ must consider whether an opinion is consistent with the record as a whole); *see also Batson,* 359 F.3d at 1195 (9th Cir.2004); *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir.2002); *Tommasetti*, 533 F.3d at 1041 (finding it not improper for an ALJ to reject a treating physician's opinion that is inconsistent with the record).

The reasons for rejecting Dr. Kwiatkowski's opinion are supported by substantial evidence. For instance, in May 4, 2009, Dr. Kanokrat Suksompoth opined that Plaintiff was "getting better" with medication and is helping his wife do business at home as Plaintiff was now unemployed. (A.R. 243). An October 19, 2010 medical record reflects

that Plaintiff stated his dizziness is better controlled with current medication, and Plaintiff denied having fatigue and vertigo. (A.R. 249-50). On May 7, 2012, Dr. Richard Alfafara reported that Plaintiff was doing well and has rare episodes of dizziness from Meniere's disease. (A.R. 323). This medical record also reflects that Plaintiff did not report fatigue, weakness, or tinnitus. (A.R. 324).

Moreover, Dr. Kunsman's April 16, 2011 report, which is dated approximately two months after Dr. Kwiatkowski's letter, indicates that Plaintiff is able to drive and "appears to have no difficulty with vertigo while driving." (A.R. 276). This supports the ALJ's finding that Dr. Kwiatkowski's opinion is inconsistent with Plaintiff's activities of daily living. As the ALJ's reasons for discounting Dr. Kwiatkowski's are specific, legitimate, and are supported by substantial evidence, the Court finds that the ALJ properly weighed Dr. Kwiatkowski's opinion.

### 2. Dr. Oluyemisi Olubi

Plaintiff's treating physician, Dr. Olubi, completed a Fatigue Questionnaire dated May 14, 2012. (A.R. 331-33). Dr. Olubi indicated that Plaintiff had a level of fatigue that impaired Plaintiff's abilities in a number of areas. The ALJ gave the findings reduced weight, explaining that the findings are contained in a form consisting of checked boxes without further explanation. (A.R. 17). This is a proper reason for giving the opinion reduced weight. *See Thomas*, 278 F.3d at 957. The ALJ also found Dr. Olubi's assessment less persuasive as it is inconsistent with Plaintiff's ability to wash dishes, help with laundry, drive a car, ride a stationary bike, lift weights, and take out the trash.

Plaintiff challenges the ALJ's reasons for giving Dr. Olubi's opinion less weight. Yet Plaintiff does not explain why he believes the ALJ improperly discounted Dr. Olubi's opinion due to it being contained in a "check box" form. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address one of the ALJ's findings as the claimant's briefing failed to argue the issue with specificity) (citing *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir.2003) (noting

that we "ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief")).  Instead, Plaintiff states "Interestingly, the capacities set forth by the state agency physicians, whose opinions are given moderate weight are also offered in the form of a check box."  This assertion is incorrect.  For example, the ALJ gave moderate weight to Dr. Kunsman's opinion, which was written in a narrative format.  The ALJ also gave moderate weight to Dr. Shepherd's opinion.  While some of Dr. Shepherd's finding are contained in a "check box" format, Dr. Shepherd's opinion also includes narrative discussion unlike Dr. Olubi's opinion.

Regarding the ALJ's statement that Dr. Olubi's assessment is inconsistent with Plaintiff's activities of daily living, Plaintiff states that Plaintiff's "condition has worsened more recently and has not even been driving in the last several months.  Dr. Olubi's opinion was offered during this worsening of condition." (Doc. 20 at 6).  Yet on May 7, 2012, just one week prior to Dr. Olubi's assessment, Dr. Alfafara reported that Plaintiff was doing well and did not have fatigue symptoms. (A.R. 323-34).  Dr. Alfafara also reported that Plaintiff was alert and well-oriented.  (A.R. 324).

It is well-settled that an ALJ, not the Court, is responsible for resolving evidentiary conflicts, ambiguities, and determining credibility.  *Magallanes*, 881 F.2d at 750; *see also Andrews*, 53 F.3d at 1039.  If the evidence can rationally be interpreted in more than one way, the Court must uphold the ALJ's interpretation.  *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001).  The Court does not find that the ALJ committed harmful error in giving Dr. Olubi's assessment less weight.

### 3. State Agency Physicians

Plaintiff challenges the ALJ's reliance on the State agency physicians' opinions by arguing that the State agency physicians "are not specialists in vertigo and, on a one-time basis, cannot judge the claimant's capacities with regard to that ongoing vertigo." (Doc. 20 at 4).  The State agency physicians in this case are licensed physicians.  Under Social Security's regulations, licensed physicians are acceptable medical sources who may offer opinions regarding a claimant's impairments and limitations. 20 C.F.R. §§

- 12 -

404.1513(a)(1),(c). Plaintiff does not cite any authority and there is no evidence in the record to support Plaintiff's contention that the State agency physicians were not qualified to evaluate an individual suffering from vertigo. The Court thus finds that Plaintiff's argument lacks merit.

### 4. Full and Fair Development of the Record

While an ALJ has a duty to fully and fairly develop the record and to assure that a claimant's interests are considered, that duty is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes*, 76 F.3d at 459-60 (the ALJ's duty to develop the record does not allow a claimant to shift the claimant's own burden of proving disability to the ALJ). Plaintiff is ultimately responsible for providing the evidence to be used in making the RFC finding. *Andrews v. Shalala*, 53 F.3d 1035, 1040 (9th Cir. 1995) (a claimant bears the burden of proving entitlement to disability benefits).

Dr. Kwiatkowski allegedly specializes in Meniere's disease and vertigo. Plaintiff argues that the ALJ should have sought the opinion of a physician who specializes in the area of Meniere's disease and vertigo before rejecting Dr. Kwiatkowski's opinion in favor of the opinions of the State agency physicians who do not specialize in the area. Plaintiff failed to raise this issue in his administrative proceedings. Accordingly, the issue has been waived. *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (holding that "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal"); *Phillips v. Colvin*, 593 Fed.Appx. 683 (9th Cir. 2015) (affirming district court's ruling that an issue was waived where claimant failed to raise it at the administrative level). As the Court does not find that a manifest injustice will occur, Plaintiff's failure to preserve the issue on appeal will not be excused. *See Meanel*, 172 at 1115.

Moreover, even if Plaintiff did preserve the issue on appeal, the Court does not find that the record is ambiguous or inadequate to allow for proper evaluation of the

evidence. The ALJ's duty to fully and fairly develop the record and to assure Plaintiff's interests are considered was therefore not triggered.

### D. Plaintiff's Challenge at Step Five: Plaintiff's Ability to Perform Other Work in the National Economy Existing in Significant Numbers

At the fifth step of the disability analysis, the burden rests on the Commissioner to show that the claimant can engage in work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). An ALJ's decision must be upheld if significant jobs exist either regionally **or** nationally. *Beltran v. Astrue*, 700 F.3d 386, 390 (9th Cir. 2012) ("If we find *either* of the two numbers 'significant,' then we must uphold the ALJ's decision."); 42 U.S.C. § 423(d)(2)(A).

The ALJ found that Plaintiff could not perform his past relevant work. But the ALJ adopted the VE's testimony that Plaintiff could perform three jobs: (i) document preparer; (ii) surveillance monitor; and (iii) telephone operator. The ALJ also adopted the VE's testimony that the job of document preparer has 268 positions in Arizona and 15,000 positions in the national economy; the job of surveillance system monitor has 70 positions in Arizona and 3,500 positions nationwide; and the job of telephone operator has 62 positions in Arizona and 3,500 nationwide positions. (A.R. 66-67). Combined, there are 400 jobs in Arizona and 22,000 jobs nationally that Plaintiff could perform.

Plaintiff argues that the Commissioner did not meet the burden of establishing that the jobs the VE identified that Plaintiff could perform exist in significant numbers in the economy. To support his argument, Plaintiff argues that 400 jobs in the State of Arizona is an insignificant number. Plaintiff, however, does not assert that 22,000 jobs nationally is an insignificant number. Based on Ninth Circuit case law, the Court finds that 22,000 jobs is a significant number of national jobs. *See Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 528-29 (9th Cir. 2014) (holding that 25,000 is a significant number of national jobs and referencing *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997), which held that 200 jobs in Iowa is a significant number). Therefore, under *Beltran*,

Plaintiff has failed to show that the Commissioner did not meet the burden at step five in establishing that Plaintiff can perform other work in the national economy that exists in significant numbers.

### III.  CONCLUSION

Based on the foregoing, the Court concludes that the ALJ's decision is supported by substantial evidence and free from reversible error.  Accordingly, the decision of the Commissioner of Social Security is affirmed.

**IT IS THEREFORE ORDERED** affirming the decision of the Commissioner of Social Security.  The Clerk of Court shall enter judgment accordingly.

Dated this 22nd day of May, 2015.

_____
Eileen S. Willett
United States Magistrate Judge